| | |
|---|---|
| WALTER EUGENE LEDERER, JR. ) | |
| ) | BRIEF TO SHOW CAUSE |
| vs. ) | WHY THE COURT SHOULD |
| ) | NOT REFUSE TO CONSIDER |
| ) | PLAINTIFF'S RESPONSE BRIEF |
| HARGRAVES TECHNOLOGY ) | OF JANUARY 15, 2003 |
| CORPORATION ) | |
| ) | |

NOW COMES Counsel for Plaintiff Walter Eugene Lederer and responds to the Order entered by the Honorable District Court Judge Richard L. Voorhees, to produce a brief showing cause why this Court should not refuse to consider its Response Brief of January 15, 2003.

Plaintiff brings to the Court two reasons as to why the Plaintiff's Memorandum in Opposition to the Defendant's Motion to Dismiss was filed on January 15, 2003 and not earlier. The first being the unexpected decline in the physical health of the senior partner in the firm and the only other attorney in the firm having to assume his workload, the second is that the Motion of the Defendant to Dismiss the Plaintiff's Second Claim For Relief necessarily requires discovery in order to adequately respond to the intent of the legislature claims by the Defendant.

First, the law firm representing the plaintiff is a two (2) attorney operation. The senior attorney is 72 years old. His health has resulted in him having no less than fourteen (14) office visits with various physicians over the past three (3) months. His eye surgery in November, the various days missed due to physicians visits, and the other days he has missed for health reasons has thrown the firm's schedule behind. As a result, the firm has stopped taking cases where litigation may result and is presently working diligently to get caught up with the caseload.

-1-

Brian R. Harwell has assumed and has been working on much of the caseload which heretofore was handled by two (2) attorneys.

Secondly, as to the Response Brief of the Plaintiff filed on January 15, 2003, to Defendant's "Motion to Dismiss the Plaintiff's Second Claim For Relief," Plaintiff was unable to adequately respond at an earlier time, as the motion by the Defendant requires discovery which was not heretofore available to fully refute the "intention of the legislature" claims elicited by Defendant's counsel in his motion.

The Supreme Court has stated that when a 12(b)(6) motion for dismissal "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Neitzke v. Williams, 490 U.S. 319, 109 S. Ct. 1827, 1832, 104 L. Ed. 2d 338 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984); Conley v. Gibson, 355 U.S. 41, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). Justice Marshall in Neitzke continues. "This procedure, operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and factfinding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law 'it is clear that no relief could be granted under any set of facts." Id.

Plaintiff's counsel is well aware of the Amos case cited by the Defendant. It is the Plaintiffs's contention that the statute in question does not provide an exclusive statutory remedy. If N.C.G.S. 127A-201 et seq. provided exclusive relief, the Plaintiff would not have brought the Second Claim for Relief in the Complaint. Defendant has misread the statute and has not provided the foundation necessary for dismissal under 12(b)(6). Until mid-January 2003, Plaintiff did not have the necessary information to disprove Defendant's attorney's mystical visionary insight into the legislative intent of the North Carolina General Assembly.

Defendant's motion should fail as to determine the intent of the legislature, if not clearly indicated by the language of the statute, may require discovery of some sort.

As the Defendant notes, it is a basic rule of statutory construction to determine the intent behind a statute, "courts should consider the language of the statute, and what it seeks to accomplish." State ex. rel. Utilities Commission v. Public Staff, 309 N.C. 195, 210, 306 S.E.2d 435, 443 (1983). Plaintiff relies on the Supreme Court opinion in Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n. 453 U.S. 1, 101 S. Ct. 2615, 61 L. Ed. 2d 435 (1981) See also, Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 639 (1981); California v. Sierra Club, 451 U.S. 287, 293 (1981); Universities Research Assn. v. Coutu, 450 U.S. 754, 770 (1981); Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 15 (1979); Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979). Middlesex states that when courts are to inquire on the intent of the legislature "We look first, of course, to the statutory language, particularly to the provisions made therein for enforcement and relief. Then we review the legislative history and other traditional aids of statutory interpretation to determine congressional intent." Id. at 12.

In State v. Greene the North Carolina Supreme Court discussed statutory interpretation which follow a Middlesex type of statutory interpretation. 348 N.C. 588, 502 S.E.2d 819, (1998). The North Carolina Supreme Court stated that: "the legislative intent . . . is to be ascertained by appropriate means and indicia, *such as the purposes appearing from the statute taken as a whole*, the phraseology, the words ordinary or technical, *the law as it prevailed before the statute*, the mischief to be remedied, the remedy, the end to be accomplished, statutes in pari materia, the preamble, the title, and other like means . . . (And) *other indicia considered by this Court in determining legislative intent are the legislative history of an act and the circumstances surrounding its adoption*, earlier statutes on the same subject, the common law as it was understood at the time of the enactment of the statute, and previous interpretations of the same or similar statutes." Id. at 596. (emphasis added); see also, In re Banks, 295 N.C. 236, 239-40, 244 S.E.2d 386, 388-89 (1978); Taylor v. Taylor, 343 N.C. 50, 56, 468 S.E.2d 33, 37 (1996); State ex rel. Thornburg v. House and Lot Located at 532 B Street, Bridgeton, 334 N.C. 290, 298, 432 S.E.2d 684, 688-89 (1993); Burgess v. Your House of Raleigh, Inc., 326 N.C. 205, 215, 388 S.E.2d 134, 140 (1990); North Carolina Baptist Hosps., Inc. v. Mitchell, 323 N.C. 528, 532, 374 S.E.2d 844, 846 (1988).

-3-

Legislative history of North Carolina's National Guard Reemployment Rights indicate that the provisions of the N.C.G.S. § 127A-201 et seq. were originally codified in 1979. There has been one bill – House Bill 432 of the 1997-1998 Session – which added provisions to that statutory section. It is important to note that no clause in House Bill 432 removed any of the rights granted in N.C.G.S. § 127A-203. When reading, as a whole, a reasonable person could interpret the statute as not intending to provide the exclusiveness to which the Defendant relies. Defendant's counsel states that there is only one remedy under N.C.G.S. §127A-201 et seq. Defendant's counsel either failed to read further, or is attempting to mislead the court in his motion to dismiss, as in addition to remedy asserted by the Defendant in N.C.G.S. §127A-202.1(a), N.C.G.S. §127A-203 states that:

> If any employer, public or private, fails or refuses to comply with 127A-202, the superior court for the district of the employer's place of business, may upon the filing of a motion, petition, or other appropriate pleading by the employee, require the employer to comply with G.S. 127A-202. . . .

Defendant's attorney came seriously close to violating the spirit of Rule 11 in his attempt to mislead this court by the use of quotations from the statute and not looking at the section as a whole. The Defendant has seriously misstated to this Court that the "National Guard Reemployment Rights Act provides an exclusive statutory remedy for employees who believe their rights under that statute to have been violated." Defendants' (sic) Memorandum of Law in Support of Motion to Dismiss the Plaintiff's Second Claim for Relief at 10, <u>Lederer v. Hargraves Tech. Corp.</u> (No 5:02-CV-122-V). The legislative history of House Bill 432 shows that the act was not titled as cited by the Defendant but was actually entitled "An Act to Implement the Lessons Learned From Hurricane Fran with Respect to the Mobilization of the North Carolina National Guard." The act was later codified under the caption of "National Guard Reemployment Rights" under Article 16 of Chapter 127 of the General Statutes without removing any pre-1997 provisions in this section. Defendant states "the express language of this statute intended to provide employees with an exclusive remedy for violations of the rights designated herein. Defendants' (sic) Memorandum of Law in Support of Motion to Dismiss the

-4-

Plaintiff's Second Claim for Relief at 9, Lederer v. Hargraves Tech. Corp. (No 5:02-CV-122-V). Using the same statutory construction cited by the Defendant, the plain language of the final version of "An Act to Implement the Lessons Learned From Hurricane Fran with Respect to the Mobilization of the North Carolina National Guard" does not create an exclusive remedy, but merely adds an additional remedy enforceable through the North Carolina Department of Labor.

Since early November 2002 Plaintiff's counsel has attempted to contact members of the North Carolina Legislature who were present during the introduction and discussions of House Bill 432. The House member which represented the 43rd House District in 2002 (which included Mooresville in 2002) was not a member in 1997-1998. In seeking out those in the House at the time of passage of the bill in question, Plaintiff's counsel attempted to contact the Hon. William T. Culpepper, a representative from Edenton, NC, and left messages with his office regarding Plaintiff counsel's need to locate members of the legislature who could shed some light as to the statutory interpretation of 127A-201 et seq. Culpepper did not return the calls of Plaintiff's counsel. It was not until C. Robert Brawley, who was a member of the legislature in the 1997-1998 session, contacted Plaintiff's counsel the first week in December to handle a property closing on December 31, 2002, that Plaintiff's counsel was able to identify specific legislators who had intimate knowledge of the intent of House Bill 432. Not being in the process of discovery, Plaintiff was limited as to sources to refute the Defendant's stance on the intent of the legislature.

P. Wayne Sexton, a retired General in the National Guard, is currently a member of the North Carolina General Assembly and co-introduced in 1997 the "Act to Implement the Lessons Learned From Hurricane Fran with Respect to the Mobilization of the North Carolina National Guard." General Sexton has been briefed on the Defendant's counsel's interpretation of the legislation Sexton co-sponsored in 1997. As a result, General Sexton, being concerned that N.C.G.S. 127A-201 et seq. has been interpreted incorrectly by Defendant's counsel, has sent a draft of what is tentatively entitled "An Act to Clarify and Re-Codify North Carolina National

-5-

Guard Re-Employment Rights" to legislative legal staff in order to introduce clarifying legislation. General Sexton plans to introduce the bill in the 145th session of the General Assembly, which convened last week in Raleigh, NC. This bill would specifically clarify the intent of the legislature of the "National Guard Reemployment Rights" section of the North Carolina General Statutes.

In light of the circumstances presented herein, PLAINTIFF PRAYS this honorable court consider this show cause brief and Plaintiff's Response Brief submitted on January 15, 2003, and that in the interest of justice, this Court will permit the Plaintiff the opportunity to use methods of discovery in order to more adequately and accurately respond to the Defendant's 12(b)(6) motion.

Dated this 4th day of February, 2003

*[signature]*

Brian R. Harwell, Attorney for plaintiff
283 North Main St.
PO Box 27
Mooresville, NC 28115
Phone  704-664-1818
Fax     704-664-1823

## CERTIFICATE OF SERVICE

The undersigned counsel of record for Plaintiff hereby certifies that he has served a copy of the foregoing BRIEF TO SHOW CAUSE WHY THE COURT SHOULD NOT REFUSE TO CONSIDER PLAINTIFF'S RESPONSE BRIEF OF JANUARY 15, 2003 on Defendant's counsel of record in this action by depositing a copy of same in the United States Mail, postage prepaid and addressed as follows:

> Philip M. VanHoy, Esq.
> G. Brian Adams, Esq.
> VanHoy, Reutlinger, Adams & Dunn
> 737 East Boulevard
> Charlotte, NC 28203

The undersigned counsel of record for Plaintiff hereby certifies that he has served a copy of the foregoing BRIEF TO SHOW CAUSE WHY THE COURT SHOULD NOT REFUSE TO CONSIDER PLAINTIFF'S RESPONSE BRIEF OF JANUARY 15, 2003 on M. Ann Anderson in this action by depositing a copy of same in the United States Mail, postage prepaid and addressed as follows:

> M. Ann Anderson
> P.O. Box 93
> Pilot Mountain, NC 27041

This the 4th day of February, 2003

_____
Brian R. Harwell